Jimmie Mae **STARKS** et al., Appellants,

v.

**CITY OF HOUSTON, Appellee.**

No. 15493.

Court of Civil Appeals of Texas.

Houston (1st Dist.).

Nov. 13, 1969.

Rehearing Denied Dec. 31, 1969.

Joseph D. Jamail, John Gano, Houston, for appellants.

William A. Olson, City Atty., Willard E. Dollahon, Senior Asst. City Atty., Houston, for appellee.

PEDEN, Justice.

Damage suit for personal injuries sustained by four passengers when the automobile in which they were riding went through a "T" intersection and into a ditch. Plaintiffs alleged that their injuries were caused by the negligence of the City of Houston in failing to provide signs, barricades and/or other devices so as to give warning of the concealed and dangerous condition to persons traveling up the stem of the "T" into the intersection. The City does not contend that it ever erected a barricade at the intersection but asserts that it gave an adequate warning by having a double-arrow sign in place.

In answer to special issues the jury did not find 1) that the failure of the City to have a barrier in place was negligence, nor did it find 3) that the City failed to have a warning sign in place at the time in question. It did find that the driver (who was not a party to the suit) committed several acts of negligence but did not find that any of them was the sole proximate cause of the accident. The jury found that each of the passengers failed to keep a proper lookout (Issues 16, 18, 20 and 22) and that each of those failures was a proximate cause of the accident (Issues 17, 19, 21 and 23).

In response to damage issues the jury found for each of the plaintiffs in a substantial amount. They have filed this appeal from a take-nothing judgment entered in the trial court.

Appellants' first contention on appeal is that the City judicially admitted that its failure to have a barrier between the intersection and the ditch was negligence.

The first trial of this case resulted in a mistrial because the jury was unable to reach a verdict. In the second trial Mr. Dollahon, counsel for the City, testified out of the presence of the jury that Special Issue No. 1 in the earlier trial had asked whether the jury found that the failure of the City to have a barrier between the intersection and the ditch in question was negligence. He admitted that in his argument to the jury in the first trial he had stated on at least two occasions that the answer to Special Issue No. 1 should be "We do".

We are not concerned with the question of admissibility. The narrow question before us is whether Mr. Dollahon's admission conclusively established as a matter of law in the second trial of this case that the City was negligent in failing to erect the barrier. We hold that it did not. It amounted to an admission against the interest of the City, but under the record in this case there are several reasons why it did not amount to a judicial admission and thus conclusively establish that the City was negligent in failing to provide the barrier.

Two leading cases in Texas on what constitutes a judicial admission are: Griffin v. Superior Insurance Co., 161 Tex. 195, 338 S.W.2d 415 (1960), and United States Fidelity & Guaranty Co. v. Carr, 242 S.W.2d 224 (San Antonio Tex.Civ. App.1951, writ ref.).

The Carr and Griffin cases, supra, were recently cited as bases for the rule that in order for a statement to constitute a judicial admission it must be clear, deliberate and unequivocal and it must be a statement of fact rather than an opinion. Hedge v. Bryan, 425 S.W.2d 866 (Tyler Tex.Civ.App.1968, writ ref., n. r. e.).

Mr. Dollahon's concession in his argument was an opinion rather than a statement of fact. It amounted only to an opinion or conclusion on his part (and therefore the City's) based on the evidence that was before the jury. Hedge v. Bryan, supra.

The conclusiveness of a party's testimony, regardless of other evidence to the contrary, is not recognized where his testimo-

ny is a matter of opinion. 169 A.L.R. 825, citing Southwestern Portland Cement Co. v. Kezer, 174 S.W. 661 (El Paso Tex.Civ. App.1915, writ ref.); Quanah, A. & P. R. Co. v. Bone, 208 S.W. 709 (Amarillo Tex. Civ.App.1919, writ ref.), and McMath v. Staten, 42 S.W.2d 649 (El Paso Tex.Civ. App.1931, writ dism.).

"It is settled that a party is not necessarily bound to a fact which he admits only by way of opinion. Petit v. Klinke, 152 Tex. 142, 254 S.W.2d 769 (Tex.Sup. 1953); DeWinne v. Allen, 154 Tex. 316, 277 S.W.2d 95 (Tex.Sup.1955). We see no reason why the same rule would not apply to his counsel in making a jury argument." Bolstad v. Egleson, 326 S.W.2d 506, 521 (Houston Tex.Civ.App.1959, writ ref., n. r. e.).

Further, his statement was not unequivocal. He could not later rebut it by testifying as to his opinion that the City was not negligent, but he demonstrated that his position (and therefore that of the City) in the second trial was contrary to his admission during the first one by introducing evidence on behalf of the City in the second trial to show that the City was not negligent in failing to erect the barrier.

■ Admissions against interest of a party, made when testifying as a witness on a former trial or in another action, are ordinarily not conclusive and are subject to contradiction or explanation by the party against whom they are offered. They will not be given the force and effect of a judicial admission if they merely contradict some other portion of his testimony. Padilla v. Texas E. I. A., 343 S.W.2d 473 (San Antonio Tex.Civ.App.1961, writ ref., n. r. e.). In Padilla, the party's testimony in another action was apparently not contradicted in that proceeding, but was contradicted in the trial upon which the appeal was based.

■ Further, even if counsel's statement had amounted to a judicial admission, it was waived when evidence to the contrary was heard. Appellants not only did not object to such evidence, they also intro-

duced some on the disputed issue, and this certainly amounted to waiver. Restelle v. Williford, 364 S.W.2d 444 (Beaumont Tex.Civ.App.1963, writ ref., n. r. e.); Dallas Transit Co. v. Young, 370 S.W.2d 6 (Dallas Tex.Civ.App.1963, writ ref., n. r. e.); Plemmons v. Pevely Dairy Co., 233 S.W.2d 426 (St. Louis Mo.App.1950).

Appellants next assert that since a party vouches for the credibility of, and is bound by, the evidence of witnesses whom it places on the witness stand, the evidence conclusively established that the City was negligent in failing to have a barrier between the intersection and the ditch.

■ We overrule this assertion. The witness to whom appellants refer was Mr. Harold Bastin, a design and planning engineer in the City's Department of Traffic and Engineering. He appeared as a witness for the City and testified as an expert to his opinions.

■ As previously noted, not even a party is necessarily bound to a fact which he admits only by way of an opinion. And the general rule is that the opinion testimony of an expert is not binding on the party who calls him as a witness. Brumit v. Cokins, 281 S.W.2d 154 (Galveston Tex. Civ.App.1955, writ ref., n. r. e.); Gulf Colo. & Santa Fe Railway Co. v. Abbey, 313 S.W.2d 108 (Ft. Worth Tex.Civ.App. 1958, no writ). The facts in the instant case raise no exception to this rule.

■ Having decided that the City was not conclusively bound by the admission of Mr. Dollahon or by whatever opinion testimony Mr. Bastin may have given, we turn to appellants' next contention, that the evidence establishes conclusively as a matter of law that the City was negligent in failing to erect the barrier. The latter position is, essentially, a "no evidence" point.

Mr. Bastin made frequent reference to a "Manual on Uniform Traffic Control Devices". He testified as to the conditions under which a double-arrow sign is placed at a "T" intersection and explained that a number of factors are examined to determine whether a barrier should be used.

They are normally placed at "T" intersections carrying relatively high speed, high volume traffic and at those where the area beyond the edge of the road at the top of the "T" is so hazardous that any motorist proceeding onward would be in great danger. He testified that the intersection in question was neither a high volume nor a high speed one (the speed limit was 30 miles per hour), and that the volume at that location would not warrant anything other than a normal warning sign such as a double arrow.

Some of his testimony as to the other factor, the danger involved in driving into the ditch in question, was more favorable to the appellants. We cannot agree with appellants, however, that it established the City's negligence as a matter of law. It merely raised a fact issue as to whether the ditch in question would fit the description which we have quoted of the danger encountered or whether it would fit one of the other descriptions which he said would call for erection of a barrier. They were:

"This would be normally at high speed, high volume, where the physical characteristics of the intersection would warrant more defined reflectivity and more warning than the other types of intersections. * * * Normally at high speed, high volume locations where. * * * At locations where a run off the roadway vehicle would be in extreme danger, such as a cliff, a drop-off that would create considerable damage. * * * It depends on several factors, none of which can be isolated. Even though the street may have a 40 to 50 mile an hour speed zone, it may not warrant a barricade. Yet a street with a 30 mile an hour speed limit with a condition such as a drop-off, at the end of a freeway ramp, where the freeway is cut through, and a residential street has come up to the edge of the freeway, this is a point where you would want to physically stop the automobile from dropping off the edge. * * *"

"Q As I understand, one of the factors, and there are many factors, that one of the factors considered by your department in deciding what kind of warning to use, that is whether to use a yellow sign or a black and silver sign or a barricade or one of these T symbols, one of the things you take into account, among others, is whether or not beyond the T there is a drop-off, to use your words that 'would likely do considerable damage'?

"A Yes."

It is uncontroverted that the appellants received painful injuries including broken bones. The witnesses' testimony as to their vehicle's speed as it approached the intersection on Dillard Street varied from 20 to 40 miles per hour, and there was also evidence that it sounded as if it were coming at a high rate of speed.

The lights of a freeway some 1200 feet beyond the ditch may have tended to give a false illusion that the street did not end.

Testimony as to the depth of the ditch varied between eighteen inches and four feet. Nor was its width agreed upon by the witnesses, but they did agree that the Pontiac automobile came to rest with its rear wheels outside the ditch near the road and its front end against the other side of the ditch.

There was no direct evidence as to slope of the sides of the ditch. No test was made to determine whether an automobile could drive through it without difficulty if proceeding within the speed limit.

We cannot say that the appellants conclusively established by the evidence that the failure of the City to erect and maintain a barrier at the place in question was negligence.

The only other primary negligence issues submitted to the jury were answered in favor of the City, and appellants do not complain on appeal of those findings. Our holding as to the barrier issue leaves the appellants without any finding that the City was negligent and makes a discussion of the appellants' other points unnecessary.

The judgment of the trial court is affirmed.